IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALANA KASELITZ, et al.,<br><br>    Plaintiffs,<br>  v.<br><br>HISOFT TECHNOLOGY INTERNATIONAL, LTD., et al.,<br><br>    Defendants.<br>_____ / | No. C-12-5760 MMC<br><br>**ORDER GRANTING DEFENDANT HISOFT TECHNOLOGY INTERNATIONAL, INC.'S MOTION TO DISMISS OR STAY CLAIMS; STAYING CLAIMS AGAINST DEFENDANT HISOFT TECHNOLOGY; DIRECTIONS TO PARTIES** |

Before the Court is defendant hiSoft Technology International, Ltd.'s ("hiSoft Technology") Motion to Dismiss or Stay Claims, filed November 19, 2012, by which hiSoft Technology seeks to compel arbitration of the claims alleged against it. Plaintiffs Alana Kaselitz and Melissa Kaselitz have filed opposition, to which hiSoft Technology has replied. Plaintiffs, with leave of court, have filed a surreply. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

**BACKGROUND**

Plaintiffs make the following factual allegations in their complaint.

In 2004, plaintiffs founded Echo Lane, a "business-consulting firm." (See Compl. ¶ 10.) In 2009, Echo Lane was "engaged in supporting hiSoft in a sales cycle," and, during the course of said engagement, "hiSoft approached the [p]laintiffs to determine if they were

---

[1] By order filed February 6, 2013, the Court took the matter under submission.

interested in [Echo Lane] being acquired by hiSoft." (See Compl. ¶ 16-17.)[2] Thereafter, plaintiffs expressed interest in an acquisition and began "negotiations over the key terms." (See Compl. ¶ 17.)

In January 2010, plaintiffs, Echo Lane and hiSoft Technology entered into a "Stock Purchase Agreement" ("SPA"), which agreement sets forth the terms of hiSoft Technology's acquisition of Echo Lane. (See Compl. ¶ 28, Ex. B.) Specifically, under the SPA, hiSoft Technology agreed to provide plaintiffs certain stock (see Compl. ¶ 31), as well as the sum of $3,085,500, payable in two installments (see Compl. ¶ 30). The first cash payment, the "First Tranche Cash Consideration," is described as a "cash payment of $1,155,000 made at the closing, subject to adjustment in the event Echo Lane's Net Current Assets as of December 31, 2009 was less than $500,000." (See Compl. ¶ 30.) The second payment, the "Second Tranche Cash Consideration," is described as a "cash payment of $1,930,500, subject to adjustment depending upon the amount of Echo Lane's actual gross profit during Fiscal Year 2011, made no later than April 14, 2012." (See Compl. ¶ 30.)

The SPA also includes a clause contemplating each said plaintiff's future employment; specifically, the SPA provides that each plaintiff "shall enter into a three-year employment agreement with Buyer,"[3] although "Buyer shall have the right to terminate the employment of either of the [plaintiffs] with or without Cause." (See Compl. Ex. B § 6.4.) The SPA further provides that the employment agreements "shall provide for an annual compensation package that is in line with Buyer's current compensation structure in the United States, and shall contain such other terms and conditions as may be agreed upon by the parties." (See id.)

---

[2] As discussed below, Echo Lane was acquired by hiSoft Technology, a named defendant, and plaintiffs were employed by hiSoft Envisage, Inc., which entity is not a defendant. Plaintiffs, however, refer throughout their complaint to both hiSoft Technology and hiSoft Envisage, Inc. as "hiSoft." Unless the particular "hiSoft" entity to which plaintiffs are referring is clear from the context in which such reference appears, the Court will refer to such entity as "hiSoft."

[3] The SPA defines "Buyer" as hiSoft Technology. (See Compl. Ex. B at 1.)

On March 22, 2010, plaintiffs and hiSoft Technology entered into an "amended Stock Purchase Agreement"("Amended SPA") in which they clarified the manner by which Echo Lane's gross profits for 2011 were to be calculated. (See Compl. ¶¶ 38, 39.)

Plaintiffs allege they agreed to sign the SPA and the Amended SPA in reliance on statements made to them by Tiak Koon Loh ("Loh"),[4] the "Chief Executive Officer of hiSoft" (see Compl. ¶ 4), and by Gene Tsai ("Tsai"), the Senior Vice President of hiSoft Envisage Inc. ("hiSoft Envisage") (see Compl. Ex. D), during the above-referenced negotiations (see Compl. ¶¶ 17-18, 26). Such statements included assurances that "hiSoft had the necessary [ ] contacts, additional sales personnel and off-shore support team in place to allow [p]laintiffs to achieve the gross profit targets being imposed" (see Compl. ¶ 21), that "hiSoft had an off-shore team already in place who had strong English speaking skills, were skilled consultants, and would be able to support United States and international customers" (see Compl. ¶ 24), and that "plaintiffs "would have control over the Echo Lane budget and team and that it would be operated as its own business unit within hiSoft" (see Compl. ¶ 25).

On April 6, 2010, hiSoft Technology paid plaintiffs the First Tranche Cash Consideration. (See Compl. ¶ 46.)

On April 28, 2010, Tsai offered each plaintiff employment with hiSoft Envisage in the position of "VP, Cloud Solutions"; each plaintiff accepted the offer. (See Compl. ¶¶ 43, 44, Exs. D, F.) According to plaintiffs, during the course of their employment, "[p]laintiffs faced numerous obstacles that were created or allowed to continue by hiSoft, all of which substantially interfered with [p]laintiffs' ability to generate the level of revenue and gross profit they otherwise would have generated had they been able to operate Echo Lane as an independent business with full control over its budget and personnel." (See Compl. ¶ 47.) In particular, plaintiffs allege, "hiSoft interfered with and disrupted [p]laintiffs' efforts to exceed their gross profit target . . . by," inter alia: "depriv[ing] [p]laintiffs of control over

---

[4]Loh is a named defendant; to date, he has not appeared.

3

[Echo Lane's] budget, business priorities and personnel," failing to make "capital injections," not having an "offshore team in place with strong English skills who were also skilled consultants," not having a "team of 15 or more sales people who would be actively selling Cloud solutions and services," "prevent[ing] [p]laintiffs from bidding or selling key deals after all pre-sales work and proposals were completed by [p]laintiffs," "prevent[ing] [p]laintiffs from hiring sales personnel in China," "fail[ing] to support [p]laintiffs in collaborating actively with the China Business Unit," "fail[ing] to introduce [p]laintiffs to any meaningful customers and contacts they have in China," "prevent[ing] [p]laintiffs from developing a strong presence in Japan within their control by refusing to provide the necessary support for [p]laintiffs' personnel," "prevent[ing] [p]laintiffs from controlling sales cycles and contract bidding processes in Japan," and taking away plaintiffs' "key personnel . . . for use by other hiSoft businesses." (See Compl. ¶¶ 48, 48a.-48k.)

Additionally, plaintiffs allege that after "hiSoft" acquired a company known as "NouvEon Technology Partners, Inc." ("NouvEon") in July 2011, plaintiffs "lost further control over budget and personnel" and "all Echo Lane personnel" were required to report to "NouvEon management." (See Compl. ¶¶ 48.l-48.m.) Moreover, according to plaintiffs, "in order to provide support to . . . the NouvEon group, Loh and hiSoft decided to attempt to force [p]laintiffs to resign from hiSoft" (see Compl. ¶ 50); specifically, on December 23, 2011, "[p]laintiffs were presented with a new 'offer letter'" that included a "demotion and salary reduction" (see Compl. ¶ 51). Plaintiffs "refused to agree to these changes," and, plaintiffs allege, "hiSoft" then "elected to terminate [p]laintiffs' employment as of February 1, 2012." (See Compl. ¶¶ 51, 52.) Thereafter, on February 20, 2012, "hiSoft notified [p]laintiffs via email regarding its calculation of the purported results of Echo Lane's performance in 2011," and, in particular, stated "[p]laintiffs were not entitled to receive any portion of the Second Tranche Cash Consideration." (See Compl. ¶ 52.) In response, plaintiffs objected to the calculations made by "hiSoft" (see Compl. ¶ 54), "identified various inaccuracies" in the calculations (id.), "requested that hiSoft provide the backup details underlying hiSoft's calculations" (id.), and requested "audited financial data" (see Compl.

¶ 55.)  According to plaintiffs, "hiSoft" refused to provide them the requested backup data and refused to complete an "independent audit of Echo Lane's FY2011 financials."  (See Compl. ¶ 55.)

Based on the above factual allegations, plaintiffs allege six causes of action.

In the First Cause of Action, titled "Breach of Contract," plaintiffs allege that hiSoft Technology, by failing to provide plaintiffs with sufficient "financial and personnel resources" during their employment, employing other practices that "interfered with and inhibited [p]laintiffs' ability to achieve and exceed" sales targets, failing to "properly calculate and pay" Echo Lane's revenues, and failing to complete an audit of Echo Lane (see Compl. ¶ 63), engaged in "breaches of the SPA and the implied covenant of good faith and fair dealing" (see Compl. ¶ 65).

In the Second Cause of Action, titled "Wrongful Termination," plaintiffs allege that hiSoft Technology breached the SPA and Amended SPA by terminating their employment without cause, which termination resulted in plaintiffs not receiving "the full amount of compensation to which they are entitled."  (See Compl. ¶ 69.)

In the Third Cause of Action, titled "Fraud-Intentional Misrepresentation," plaintiffs allege Loh and Tsai, "[d]uring the course of the negotiations leading to the SPA and Amended SPA," made numerous statements about circumstances pertaining to plaintiffs' future employment and other interaction with "hiSoft," e.g., that "hiSoft had an offshore team already in place who had strong English skills" (see Compl. ¶ 75); plaintiffs further allege such statements were knowingly false (see Compl. ¶¶ 76, 77), and were made with the "intent of inducing [p]laintiffs to enter into the SPA and Amended SPA (see Compl. ¶ 78).

In the Fourth Cause of Action, titled "Fraud - Nondisclosure," plaintiffs allege Loh and Tsai "failed to fully disclose" certain facts regarding the circumstances of plaintiffs' future employment and other interaction with "hiSoft," e.g., that "hiSoft never intended to allow Echo Lane to be operated as a separate business unit" (see Compl. ¶ 86), and did so to "induce [p]laintiffs to enter into the SPA and the Amended SPA" (see Compl. ¶ 87).

In the Fifth Cause of Action, titled "Fraud - Negligent Misrepresentation," plaintiffs rely on the same allegedly false statements identified in the Third Cause of Action (see Compl. ¶¶ 93, 94), and allege such false statements were made in breach of "duties to [p]laintiffs to provide them with truthful information concerning the material aspects of the transaction and hiSoft's operational and financial systems and support personnel" (see Compl. ¶ 92).

In the Sixth Cause of Action, titled "Accounting," plaintiffs allege they are entitled to a "full accounting of the hours and attributable revenue and gross profit generated through any and all efforts led and driven by [p]laintiffs and their team during Fiscal Year 2011." (See Compl. ¶ 103.)

## DISCUSSION

By the instant motion, hiSoft Technology seeks to compel plaintiffs to arbitrate their claims against hiSoft Technology, based on an arbitration provision contained in each plaintiff's employment agreement with hiSoft Envisage.

"In determining whether parties have agreed to arbitrate a dispute, [courts] apply general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." Mundi v. Union Security Life Ins. Co., 555 F.3d 1042, 1044 (9th Cir. 2009) (internal quotation and citation omitted). Where the "face of the contract [ ] indicates the dispute is [ ] within the scope of the arbitration provision," a "presumption in favor of arbitration" applies. See id. at 1044-45. "If contractual language is clear and explicit, it governs." See In re Tobacco Cases I, 124 Cal. App. 4th 1095, 1104 (2005).

**A. Scope of Arbitration Provision**

The subject arbitration provision reads, in relevant part, as follows:[5]

> In consideration of my employment with the Company, its promise to arbitrate all employment-related disputes, and my receipt of the compensation, pay raises and other benefits paid to me by the Company, at present and in the future, I agree that

---

[5] In the employment agreements, the entirety of the arbitration provision is set forth in capital letters.

6

> any and all controversies, claims, or disputes with anyone (including the Company and any employee, officer, director, shareholder or benefit plan of the company in their capacity as such or otherwise), whether brought on an individual, group, or class basis, arising out of, relating to, or resulting from my employment with the Company or the termination of my employment with the Company, including any breach of this agreement, shall be subject to binding arbitration under the arbitration rules set forth in California Code of Civil Procedure Section 1280 through 1294.2, including section 1283.05 (the "Rules") and pursuant to California law.

(See Decl. A. Kaselitz, filed December 8, 2012, Ex. A ¶ 12.A.)[6]

As expressly provided in the above-quoted provision, plaintiffs agreed to arbitrate any claim "arising out of, relating to, or resulting from [their] employment." (See id.) Plaintiffs argue that their claims against hiSoft Technology do not arise out of or relate to their employment. For the reasons discussed below, the Court disagrees. In particular, the Court finds each of the claims against hiSoft Technology relates to plaintiffs' employment with hiSoft Envisage and, consequently, falls within the scope of the arbitration provision.

Plaintiffs, as noted, allege they negotiated the terms of the SPA, as well as the Amended SPA, with both an executive of hiSoft Envisage and an executive of hiSoft Technology. Under the SPA and Amended SPA, the parties thereto agreed hiSoft Technology would acquire Echo Lane from plaintiffs for certain specified consideration. The consideration to which plaintiffs ultimately would be entitled for the sale of Echo Lane was, in large part, dependent on the gross revenue Echo Lane would earn during the fiscal year 2011, with the further understanding that plaintiffs would stay on to run Echo Lane as employees of hiSoft Technology and would enter into employment agreements thereafter. Shortly thereafter, hiSoft Envisage offered each plaintiff employment as a vice president, and each plaintiff accepted that offer. In short, the parties' negotiations and agreements as to the purchase of Echo Lane by hiSoft Technology are inextricably intertwined with plaintiffs' employment agreements with hiSoft Envisage.

---

[6] With the exception of the plaintiff's name, the subject employment agreements are identical. For convenience, the Court will cite to the employment agreement signed by Alana Kaselitz.

7

1	Of equal if not greater importance, plaintiffs' claims are based, in essence, on their
2	allegations that, contrary to promises made to them by executives of hiSoft Envisage and
3	hiSoft Technology during the above-referenced negotiations, plaintiffs were not provided
4	with necessary budget control, support and personnel during the course of their
5	employment with hiSoft Envisage.  As a result of said failures, plaintiffs allege, they were
6	unable to meet the goals set forth in the SPA that, if met, would have entitled them to
7	additional consideration for their sale of Echo Lane.[7]  Although plaintiffs allege it is hiSoft
8	Technology, as opposed to hiSoft Envisage, that owes plaintiffs damages in light of
9	plaintiffs' inability to earn such additional consideration, a determination of whether plaintiffs
10	met their goals and, if not, who was responsible for such failure, necessarily will require a
11	detailed review of plaintiffs' interactions with hiSoft Envisage, including its officers and staff,
12	as well as with its customers, during the course of plaintiffs' employment with hiSoft
13	Envisage.

14	In sum, plaintiffs' claims "relate to" their employment agreements.  See Chiron Corp.
15	v. Ortho Diagnostic Systems, Inc., 207 F.3d 1126, 1131 (9th Cir. 2000) (holding arbitration
16	provision requiring arbitration of any dispute "relating to" agreement is "broad and far
17	reaching").

18	Plaintiffs next argue the parties, by entering into the SPA, agreed any claims they
19	might have against one another would not be subject to arbitration.  In support thereof,
20	plaintiffs rely on a section of the SPA titled "Governing Law and Jurisdiction," which states
21	as follows:

> This Agreement shall be governed by and construed in accordance with the laws of the State of California, regardless of the laws that might otherwise govern under applicable principles of conflicts of laws thereof.  The parties [plaintiffs, Echo Lane, and hiSoft Technology] agree to submit to the exclusive jurisdiction of the federal or California courts located in the City and County of San Francisco.

(See Compl. Ex. B ¶ 11.6.)

---

[7]Plaintiffs alternatively allege the results of an accounting may demonstrate they in fact met their contractual goals.

8

As discussed above, the negotiations pertaining to and plaintiffs' execution of employment agreements were, as contemplated in the SPA, events that would occur at a later time, and the parties to the SPA expressed their mutual understanding that those employment agreements would contain, in addition to any provisions pertaining to compensation, "such other terms and conditions as may be agreed upon by the parties." (See Compl. Ex. B ¶ 6.4.) Consequently, nothing in the SPA precluded the parties from later agreeing to arbitrate claims relating to plaintiffs' employment. To the extent the SPA has any bearing on the subject of arbitration, it does no more than require any dispute regarding enforcement of an arbitration clause to be heard, as here, in California and governed by California law.

**B. hiSoft Technology's Standing**

Plaintiffs argue that, notwithstanding their broadly worded promise to arbitrate their claims, hiSoft Technology lacks standing to enforce the arbitration provision, for the asserted reason that hiSoft Technology is not a party to the employment agreements. The Court disagrees.

At the outset, the Court notes the employment agreements are between each plaintiff and "the Company," which term is defined in the employment agreements as "hiSoft Envisage, its subsidiaries, affiliates, successors or assigns." (See Decl. A. Kaselitz, filed December 8, 2012, Ex. A at 1.) Consequently, on its face, the employment agreements' definition of "the Company" encompasses entities other than hiSoft Envisage, including affiliates thereof. As hiSoft Technology points out, hiSoft Technology falls within the definition of "the Company," because, under the California Corporations Code, a "parent" of a corporation is an "affiliate" of such corporation, see Cal. Corp. Code §§ 150, 175,[8] and hiSoft Envisage is a "wholly-owned subsidiary of hiSoft Technology" (see Litster Decl. ¶ 2); see also Black's Law Dictionary 67 (9th ed. 2009) (defining "affiliate" as

---

[8] As set forth expressly therein, the employment agreements are "governed by the laws of the State of California without giving effect to any choice of law rules or principles that may result in the application of the laws of any jurisdiction other than California." (See Decl. A. Kaselitz Ex. A ¶ 13.A.)

9

"corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation"). Plaintiffs contend, without further elaboration, that "the California Corporations Code definitions of 'affiliate' and 'parent' . . . do not govern this Court's interpretation of the [a]rbitration [a]greements." (See Pls.' Surreply at 3:10-13.) Plaintiffs, however, cite to no other interpretation of those terms, let alone suggest a "reasonable" alternative interpretation. See Muzzi v. Bel Air Mart, 171 Cal. App. 4th 456, 462-63 (2009) (holding contractual term is "considered ambiguous when it is capable of two or more constructions, both of which are reasonable") (internal quotation and citation omitted).

Accordingly, the Court finds hiSoft Technology is a party to the employment agreements, and, consequently, can enforce the arbitration provisions therein.

Moreover, assuming, arguendo, hiSoft Technology is not an entity encompassed within the definition of "the Company," a nonsignatory to an agreement may nonetheless enforce an arbitration provision included therein where any one of a number of contract or agency principles is applicable. See Mundi, 555 F.3d at 1046. Under one form of "equitable estoppel," for example, a signatory to an agreement containing an arbitration provision may be compelled to arbitrate its claims against a nonsignatory where the plaintiff signatory "alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement." See Kramer v. Toyota Motor Co., — F.3d — , 2013 WL 357792, *5 (2013) (internal quotation and citation omitted).

Here, plaintiffs' complaint alleges that officers of hiSoft Envisage and hiSoft Techology jointly negotiated the acquisition of Echo Lane and made the false promises that assertedly induced plaintiffs not only to sell Echo Lane but also to agree to the manner in which they would be compensated in their future contemplated employment. Indeed, the provision in the SPA contemplating plaintiffs' future employment with "Buyer" was apparently satisfied by plaintiffs' entering into employment agreements with hiSoft

Envisage. Equally, if not more important, plaintiffs seek damages from hiSoft Technology based primarily on conduct on the part of hiSoft Envisage, specifically, hiSoft Envisage's alleged failure to provide plaintiffs with the support necessary to enable plaintiffs to meet their goals during the course of plaintiffs' employment.

Under such circumstances, and provided the subject arbitration provision is valid and enforceable, the Court finds hiSoft Technology is entitled to enforce said arbitration provision.

**C. Unconscionability**

Plaintiffs argue the arbitration provision is unconscionable, and, consequently, is invalid and unenforceable.

An arbitration provision may be invalidated under "generally applicable contract defenses," such as "unconscionability." See AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1746 (2011). "Under California law, courts may refuse to enforce any contract found to have been unconscionable at the time it was made, or may limit the application of any unconscionable clause." Id. (internal quotation and citation omitted). "A finding of unconscionability requires a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." Id. (internal quotation and citation omitted).

With respect to the latter of the two elements, plaintiffs argue the subject arbitration provision is substantively unconscionable because the employment agreements were not signed by an agent of hiSoft Envisage. In support thereof, plaintiffs cite to the principle that an arbitration provision that requires one party, but not the other, to arbitrate claims is substantively unconscionable. See, e.g., Armendariz v. Foundation Health Pyschcare Servs., Inc., 24 Cal. 4th 83, 120-21 (2000) (finding arbitration clause "unconscionabl[y] one-sided," where clause required employee but not employer to arbitrate claims). The Court is not persuaded.

First, to the extent plaintiffs are suggesting hiSoft Envisage is not in any manner bound by the employment agreements, the Court disagrees. Plaintiffs acknowledge hiSoft

11

Envisage made the offers of employment, as set forth in the employment agreements, and that plaintiffs subsequently agreed to accept said offers without any changes. (See Compl. ¶ 42, Ex. D; Alana Kaselitz Decl., filed December 8, 2012, ¶ 7, Ex. A (employment agreement).) Upon plaintiffs' acceptance of the offer, a binding contract was formed as a matter of law. See Donovan v. RRL Corp., 26 Cal. 4th 261, 270-71 (2001) (noting "[a]n essential element of any contract is the consent of the parties, or mutual assent"; further noting "[m]utual assent is normally manifested by an offer communicated to the offeree and an acceptance communicated to the offeror"). Second, contrary to plaintiffs' assertion, the employment agreements require both hiSoft Envisage and plaintiffs to arbitrate all covered claims. In particular, each plaintiff's agreement to arbitrate is made, inter alia, "[i]n consideration of [her] employment with the Company" and "its promise to arbitrate all employment-related disputes" (see Alana Kaselitz Decl. Ex. A ¶ 12.A); each plaintiff also acknowledged therein her "understand[ing] that this agreement to arbitrate also applies to any disputes that the Company may have with [her]." (See id.) Consequently, plaintiffs have failed to show the arbitration provision is substantively unconscionable.[9]

Accordingly, the Court finds the subject arbitration provision is valid and enforceable.

**E. Stay of Proceedings Against hiSoft Technology**

Under both federal and state law, where, as here, a court has found a plaintiff's claims to be subject to arbitration, the court must stay the action pending completion of the arbitration proceedings. See 9 U.S.C. § 3 (providing, where "suit or proceeding" is "referrable to arbitration," court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement"); Cal. Civ. Proc. Code § 1281.4 (providing, where "a court . . . has ordered arbitration of a controversy which is an issue involved in an action or proceeding pending before [the] court, . . . [such court] shall, upon motion of a party to such action or proceeding, stay the

---

[9] In light of this finding, the Court does not address herein the issue of whether the arbitration provision is procedurally unconscionable.

12

action or proceeding until an arbitration is had . . . .").

Accordingly, the Court having found plaintiffs' claims against hiSoft Technology are subject to arbitration, plaintiffs' claims against hiSoft Technology will be stayed until the arbitration has been conducted in accordance with the terms set forth in the arbitration provision.[10]

## CONCLUSION

For the reasons stated above, hiSoft Technology's motion to compel arbitration is hereby GRANTED, and plaintiffs' claims against hiSoft Technology are hereby STAYED pending completion of arbitration proceedings.

Plaintiffs and hiSoft Technology are hereby DIRECTED to file, no later than August 9, 2013, a Joint Status Report, apprising the Court of the status of the arbitration proceedings.

**IT IS SO ORDERED.**

Dated: February 15, 2013

MAXINE M. CHESNEY
United States District Judge

---

[10] The stay does not apply to plaintiffs' claims against Loh, who, as noted, has not, to date, appeared.

13